The next case is Carnelli v. Karani. The purpose is not to amuse us. Good morning, Your Honors. May it please the Court. Evan Ouellette on behalf of the defendant appellant Arbaad Karani. This court should overturn the district court's order denying the defendant officer Karani's assertion of qualified immunity from each of the Vermont state law claims asserted against him. Because first, the plaintiff has not met his burden of identifying clearly established law, which demonstrates that the defendant's particular conduct violated those rights asserted by the plaintiff. Also, Karani was acting in the scope of his employment. And further, to the extent the court found the dispute a fact, the dispute is not material to the claim of qualified immunity. And therefore- How is he acting within the scope of his employment? I mean, his initial encounter was when he was functioning off duty as a bouncer. And the letter was sent to, it was on Boston police form, but it was sent to a Vermont entity. Yes, Your Honor. I guess initially, and just to be clear, although there were two interactions, there were two different lawsuits. The first lawsuit is resolved. The incident back in 2009 at the bar is not part of this case. The three Vermont state law tort claims are based entirely upon the faxing of the memorandum. Did the sending of the letter post-date the release in the earlier case? No, Your Honor. The release occurred afterward. And we made that argument to the district court. However, I don't think we can bring that before this court because it's not part of the qualified immunity argument. But just to answer Judge Jacob's question, how was the faxing of the memo to the Vermont DOC within the scope or authority of his employment as a Boston police officer? Yes, Your Honor. So in order to be outside the scope of employment, it needs to be manifestly beyond the officer's line of duty and entirely outside the scope of any employment duty. And cases discussed this as not being a difficult burden to show because malperformance of an act that otherwise falls within the scope of an officer's duty doesn't place it outside the scope of the duty, even if it is determined to violate rules and procedures, even if it's a malperformance of the duty, even if it's performed with malice. It can still fall within the scope of the employment if it is not manifestly beyond the officer's line of duty. And in this case, the fax memo, it describes information that the officer obtained while being sued as a member of the Boston Police Department for acts that occurred while he was a member of the Boston Police Department, information that he received from his counsel regarding what the plaintiff had said during depositions in that case in which he was being sued as a member of the Boston Police Department. The memo is an official Boston Police Department form, it's called a form 26, it's used to communicate with agencies. But that was to communicate to the Boston police because he was afraid of going to his deposition unarmed or without police support. That's why he did that memo, so that they'd protect him at his deposition because he heard these other things from the other depositions in the case. So that may be true, that that's in the course of his employment. But how is then sending that, a copy of that memo, to the Vermont DOC part of his employment or his authority? Well, the content of the memo not only says, I'm afraid because of the things I've been told about the behavior of the plaintiff. But it also says in the memo, I request that this information be sent, he sends it up the chain of command, to the Vermont Department of Corrections because I'm concerned about the behavior of the plaintiff. And I'm now aware that he's made suicidal and homicidal statements. And I'm told by my attorney that she's concerned about his mental stability and also some other issues about checking the officer's Facebook on a daily basis, recently having purchased firearms. And he's told by his counsel that he works for the Department of Corrections. So it is not, that wasn't just the purpose was to be safe, it was also to identify to a fellow law enforcement agency that you have an employee, an officer. I mean, this person is not, he doesn't work at Target, he's a correctional officer. And it's a communication to a fellow law enforcement agency that this individual has made homicidal and suicidal statements. Well, what difference would it make if he worked at Target? Target doesn't want to employ and Target would fire or make inquiry into the suitability of anybody who is the object of this kind of imputation. I would agree with that, Your Honor. I guess my point was just that this- What does it have to do with it that he worked for the Department of Corrections? Well, I think, Your Honor, that it furthers a law enforcement interest. He's not just sending this information up the chain of command. He's also sending it to and asking that the information be sent to another law enforcement agency. You could look at it that way, and the other way you could look at it is in active spite and great desire to hurt somebody who has sued him. And wouldn't that raise an issue of fact as to good faith, which is integral to qualified immunity in the state of Vermont? Well, a couple issues there, Your Honor. With respect to good faith, the answer is no, and I think that is a main point of our brief. Good faith has nothing to do with subjective motive when dealt with in the context of qualified immunity. The words good faith, when typically uttered, you think, well, pure motive. But that is not relevant in the qualified immunity context of good faith. Qualified immunity talks about good faith being purely objective. It's whether or not the law is clearly established that the officer's actions would have violated the rights asserted by the plaintiff. So motive is irrelevant to good faith. And I know the court focused on that, that there's always going to be a disputed issue of fact with regard to subjective motive. If that ran in qualified immunity void, then no one would ever be entitled to qualified immunity. Good faith isn't reliant upon the pure motive of the officer. It's just whether or not, it's essentially a clearly established test. I mean, intent only becomes an issue if you've got some evidence suggesting an intent other than the neutral pursuit of your responsibilities on the job. Yes, Your Honor, I- There is evidence here of personal hostility of long standing and spite and hatred. There is, Your Honor, but I suppose my point is that the subjective motivation, while an issue in the case, it's a disputed issue, is not relevant to the qualified immunity determination, because it's specifically not relevant to good faith. And it's also not relevant to the scope of employment. You can perform an act that would otherwise be within the scope of your employment for the wrong reasons. It doesn't place it outside the scope of your employment. I mean, there are cases, excessive force cases, where officers, I mean, they may be disciplined by their department for excessive force. The excessive force may have been, they may have been subjectively motivated for the wrong purpose. But that doesn't deny them qualified immunity, nor does it take it outside the scope of their employment. And I guess I'd say, I understand the court's point, I do. I mean, our point in scope of employment is not only that it was on a form that he wrote on duty, he sent up the chain of command, he faxed it from the station while on duty. But he also, I mean, it furthers a law enforcement interest. And the Vermont Department of Corrections, a fellow law enforcement agency, agreed. They reviewed the memorandum. They didn't take a great deal of steps, but they did reach out to the Boston Police Department's attorneys, obtained the deposition transcripts, read what the plaintiff had actually said at those depositions, as well as the transcripts of the depositions of the plaintiff's family members, who talked about things that he had said to them about having suicidal ideations, being suicidal. Stating to them that he wanted to kill a police officer. And the Vermont Department of Corrections took that information and said, we are going to require you to undergo a fitness for duty evaluation before you return from your voluntary leave of absence. And I guess I would- Yes. I have a question about the chronology here. The memo was sent to his superiors on January 9th, and it does say, I'd ask you to contact Vermont and tell them about this for his safety and the safety of the inmates. But it was the very next day he himself sent it on to Vermont, right? He didn't wait for his superiors. He might have a different argument if his superiors got it and then a week later sent it up to Vermont and he didn't do it himself. But why did he do it the next day? Well, his captain was not there. First of all, the captain wasn't assigned. The captain was deposed in this case. He was visiting. The officer was aware that it hadn't been sent. He wanted it to be sent. And perhaps he should have had his commanding officer send it. But I don't think, again, would that place the action of the commanding officer sending it outside of that commanding officer's scope of employment? I don't think it would. An example I would give is a police officer, police officers respond to an incident within their town. And there's an officer from another department involved. And they don't make an arrest, but maybe there's extraordinary levels of intoxication or maybe a domestic incident, something like that that raises concerns. And they reach out to that officer's department and inform the department that there may be an issue with one of their officers. Perhaps we didn't make an arrest, we're not going to use our police powers to deal with this. But you should be aware of it and you can investigate it and deal with it as you choose. And I think that type of action law enforcement agencies communicating does not fall manifestly outside the scope of the line of duty of a police officer. And I understand the court discussed and the plaintiff discusses that the officer was not specifically ordered or approved to send the memo. He sent it before he received any approval and he was not ordered by any superior officer to send the memo to Vermont. However, whether or not a supervisor orders or approves it is not required for it being within the officer's scope of employment. No police officer would ever be entitled to qualified immunity in an excessive force claim if the force they used was, if it was required to be specifically authorized, approved, or ordered by a superior officer. So I think those facts, and I do think it's worth saying that the district court didn't actually identify a dispute, a factual dispute, a dispute that, or a fact that is in dispute with respect to the scope of employment. They talked about the officer not being specifically ordered or approved to send the memo by a supervisor. You keep talking about the context of law enforcement, and that is the context of this. But if you transposed all of this into a lawsuit between an investor and an employer, and they went into it, and they hated each other. And at deposition, one of them said, I have ideations of killing the other side. All of this could take place outside the law enforcement environment. And you send a letter to the employer of the person who you think is, has, who would like to kill you, what does this have to do with law enforcement? I would suggest that law enforcement has a separate and higher duty to respond to those types of incidents. If there is a law enforcement agent that is demonstrating signs, suicidal, homicidal ideation, and an officer becomes aware of that information, providing that information to another law enforcement agency regarding that officer's actions would be within the scope of their employment. I understand it could occur in another setting. There are a lot of litigations in which people hate each other. It's almost the rule. Fair enough. But again, I would argue that hating each other is not relevant to whether the act falls within the scope of employment or satisfies the good faith requirement in the context of qualified immunity. Well, you've reserved your button, so we'll hear the answer. Thank you, Your Honor. May it please the court, I'm John Markham for Appalee, the young man who has had this ongoing dispute with the police officer. This police officer's state of mind is highly relevant to whether this letter was sent within the scope of his employment, which is one of the factors for qualified immunity, and there are questions of fact all over that. Their argument is, well, gee, he was concerned about the good folks up in Vermont, and he thought he ought to warn them. That really isn't a police officer of Boston's function. But assuming that that could be a proper function, assuming that, there's a question of fact as to why he did it, was that his real reason? Or was it to malign a young man who he had beaten? The beating was caught on videotape. Before anybody knew about the videotape, the officer had sworn out a complaint and testified in a preliminary hearing that this young man had beaten him. This young man was indicted, and then three days before the trial, a video surfaced showing that what the officer said was absolutely not true, it was the other way around. Then the prosecution dropped the case completely, dismissed it, and thereafter, this young man sued the officer. In that context, the officer sent this memo, and the memo is not just a warning, it contains a falsehood. It says that this, that Jacob Carnelli, the young man, had made homicidal threats to me. That's the title. And in the document itself, the officer writes, he made suicidal and homicidal threats towards me. That never happened. You couldn't make suicidal threats to him. That's true. But- But as I understand it, the homicidal threat was to people involved in the litigation. No, your honor. What he said in the litigation was, in his deposition. In his deposition, because the case settled before trial, so there was no trial. In his deposition, he said, I have homicidal thoughts, but good people don't act on bad thoughts. That's what he said. He did not threaten Carani. Now, perhaps Carani can take the stand in a jury trial and say, I read that as a threat. And therefore, I thought I was threatened. And therefore, I thought it was in my police duties to warn the people where he worked. Don't you think it's disturbing to hear that somebody would like to kill you, but they're going to restrain themselves? I don't think he said he wanted to kill him. He said he had homicidal thoughts because of what the man had done to him. The beating and the false charges, but he wasn't going to act on it. But whether he has bad thoughts, whether it's disturbing to the officer that Jacob said what Jacob said about the officer makes it less likely that it was a police function and more likely it was part of the animus between them. And there is a genuine question of fact, your honor, as to why this memo was sent. If it was sent, as Carani says, because he was concerned about everybody up there, then our argument at trial would be that's not his business as a police officer, so therefore it wasn't within his function. But our argument goes beyond that. We're saying that's not why he sent it at all. He sent it because he didn't like this little punk who had done him in and got him sued and gotten him in trouble and exposed him as a liar and he was going to get him. That's why he sent the memo and that's why the memo contained a falsehood. That's our argument. That is just, and on the basis of the unresolved issues of his state of mind in terms of why he sent it, the district court corrects. What does the falsehood have to, I mean the falsehood has a great deal to do with the merits, but what does it have to do with qualified immunity? Because if it was a false statement, it is liable and that is a clearly defined wrong for which qualified immunity cannot be found. In other words, everybody knows, this is not subject to reasonable debate, this isn't some law out on the fringe. If you lie about somebody to their employer, you are subjecting yourself to a liable claim or a slander claim depending on the context. And this is what we contend that he did. He lied. And it was a lie that was very dangerous because he threatened to kill me. He has homicidal threats against me. Isn't that in words of substance what his lawyer told him, which caused him to consider showing up armed to his deposition? Yes, your honor. And he can say that he believed that what he put in this memo is true. And if he did believe it, that may have some impact on whether it's libelous. But the jury has to credit that belief against the fact, number one, that it was false. Number two, that the lawyer who talked to him about- Get back to, that deals with the merits. Yes. And really is not bearing on the qualified immunity. But you can't, but I believe the court below made the determination that you can't have unqualified immunity as a matter of law because if our contention based upon our set of facts is correct, then it wasn't within the scope of his employment and it couldn't have been reasonably believed to him to have been something he could have done. In other words, it violated a very settled right of the plaintiff, which was not to be liable to his employer, that's settled law. And in order for it to be good faith on the part of this officer, not only does it have to be within the scope of his employment, but it has to be where there is no clearly established right that he was violating. You cannot make falsehoods to somebody's employer, as you said in questioning my opponent, that could get him fired. And even Karani in his deposition was forced to admit, Your Honor, that this could get him in trouble with his job. Yes, he did. Not a police function at all. So if a jury finds Karani was genuinely concerned about the safety of these people, and if the jury finds that Karani, that it was within the scope of his police officer's duty. You would concede that if it comes to the attention of a police officer in Town A, that a police officer in Town B is psychotic, that it would be within the scope of the first officer's job description to contact the other police department and say, you ought to worry about this person. Yes, if he believed it. Well, I think, actually, the nicety, Your Honor, would be that he sent the memo up the chain, and let the chain determine what they should do about it vis-a-vis Vermont. He didn't really have time, did he? Because if his commanding officer was away, and he had to go to this deposition, he really required some decision earlier. Your Honor, I believe that would be a question of fact as to whether the reason he sent that on his own was because he couldn't find a captain to send it for him, or whatever. The deposition had happened before. This was something that had been ongoing between the two of them for a long time. Again, those are questions of fact that go to why he sent the memo. Reasonable jurors could believe, based upon the evidence, the prior motive which the court relied upon, and the falsity in the memo, that he did this not to warn anybody, but to get the young man who had caused him so much trouble. And that's something that, until that is resolved, Your Honor, one cannot determine the qualified immunity. The judge correctly stated the qualified immunity elements in her opinion. She will correctly, if this court remands, affirms, she will instruct the jury. And then the jury will weigh what you've been asking about. And those are good arguments that I'm sure my brother will make very cogently. But our counter arguments will be that it was for a different reason, and that it is plausible that it was for a different reason. And that it's evidentiary facts that it was for a different reason. And it would be for the jury to decide what his motive was. I suppose somebody does the right thing for the wrong reason. You do a good thing for a bad reason. Well, then- And it's within the scope of employment. But it was, but that begs the question of whether it was a good thing. This was a false, this was a false statement. He did not threaten Officer Karame. And the record doesn't show that at all. The, if you look at the memo, the question is just generally, why was it sent? That is a question of fact. Your Honor has given, perhaps even given my opponent some arguments for the trial as to arguments he can make to the jury. But unless it can be said, this is for this court's jurisdictional purposes. Unless it can be said that there is no disputed fact that is either not stipulated to by the plaintiff or agreed to by the plaintiff. This court has no jurisdiction to decide this because it's not being done on a matter of law based upon stipulated facts. These facts are disputed. And therefore, this court should simply, we respectfully say, we don't have the power to decide the qualified immunity. Because it is so intertwined with the claim, as this court's prior cases have said, that it needs to go back and be decided on the merits based upon the factual disputes. Thank you. Go ahead. Thank you, Your Honor. Thank you, Your Honors. The scope of employment issue was not specifically decided by the district court. It was determined that there was a dispute of fact and therefore it couldn't be reached. However, there's no fact identified that would undermine the resolution of that issue. If the fact that we're talking about is the subjective motivation, did he send the memo for a bad reason? That is not a dispute of fact that is relevant to the determination of scope of employment. You can do the right thing for the wrong reason, but as long as it falls, as long as it's not manifestly outside of your employment duties, it's still within the scope of your employment. And there are many cases that we cited, malperformance, I mean, intentional torts. These things can be inside the scope of employment. Subjective motivation is irrelevant. So I guess the point I'm trying to make is that the court needed to make a determination as to scope of employment. It didn't. It didn't because it said that there were facts in dispute, but there weren't. The facts it relied upon, we accept. And we're saying we are entitled to scope of employment, a determination of scope of employment, based on the plaintiff's facts, including that the officer wasn't specifically ordered to or approved to send the memo. And I guess I would just respond by saying that torts of libel and slander are subject to qualified immunity under Vermont law. I think we've cited a number of cases that talk about Vermont state law granting qualified immunity to lower level public officials for basic torts. And I just would also state that the district court did not conduct a qualified immunity analysis, as it was required to, specific to the actual torts alleged. Its qualified immunity analysis was essentially limited to the Garnett case, and it said, well, the Garnett case stands for the proposition that there's a clearly established right to a fair trial under the Constitution, and in that case, there was a defendant who fabricated inculpatory evidence, which was used to arrest and falsely prosecute an individual. Well, those, not only did that case not deal with any of the claims that are being dealt with here, state law tort claims, and it was actually decided after this incident occurred, so it couldn't be precedent. But it also dealt with facts that were entirely inapplicable to this case. And that was the limit of the court's qualified immunity analysis on these three tort claims. In that case, Garnett, or the Ratucci case, which is not nearly identical, would not have placed Officer Carani on clear notice that his particularized actions violated the state tort laws that are being asserted by the plaintiff. So that the qualified immunity analysis, with regard to good faith, and again, good faith doesn't mean good faith. Good faith means clearly established law demonstrating that the particularized conduct violates the rights asserted by the plaintiff. And in this case, it's three Vermont tort claims, not a claim for a fair trial. And I guess I would just, with respect to, is this a law enforcement function, doing the right thing? The facts of this case are pretty extraordinary. I mean, not waiting for your supervisor. If you become aware, your counsel telling you, the plaintiff is going to be here tomorrow. I know the memo says that the plaintiff made homicidal threats towards me, but it's undisputed, as testified to by counsel. And again, the officer wasn't at the depositions. All the information he's obtained is from his counsel. Counsel was deposed, and she stated, she didn't deny what Officer Carani had testified to, but her memory was that she said that the plaintiff had expressed homicidal thoughts towards you, and that's what she's telling Officer Carani. And in the context of everything else she told him, that she was personally concerned about his mental health, that the deposition was going to be held at City Hall because there would be metal detectors there. Let me ask you this. I mean, he may have felt it was an emergency to take care of his personal safety. But why did it become an emergency to write to the plaintiff's employer? I don't know why time would not be of the essence if someone had made homicidal statements, suicidal statements. They're a correctional officer, they work in a stressful job where they are responsible for the safety and welfare of other individuals. I mean, the timing of the memo, it was written because the plaintiff was coming to Massachusetts to attend the deposition. However, it's requested in the memo, not that the information be passed on at some point, but that the information be passed on because it's important, and it was important. The Vermont Department of Corrections got the memo, said we should look at what this person actually said. They got copies of the plaintiff's deposition transcripts. At that point, by the way, and I didn't even really get into the elements of the torts, but the memo loses all import at that point, because the memo just says, this is what my attorney said the plaintiff said at his depositions. Now, the employer has actual copies of the depositions and can read them. And they have copies of the depositions given by the plaintiff's brother and his father. And they look at those, and we have testimony from the Rule 30b-6 representative of the employer. And the employer said, yes, I found the plaintiff's actual statements. Not what I was told by Karani in the memo, but in the actual review of these statements, I found it threatening. We have your arguments. We have the briefs. Thank you both. I thank you, your honors. We're going to reserve decision. The case of William versus the city of New York is taken on submission. The case of Lanterry versus the state of Connecticut is taken on submission. That's the last case on calendar. Please adjourn court.